UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM M. GUSTAFSON,

             Plaintiff,

     v.

VILLAGE OF FAIRPORT, PHILIP
PROVENZANO, DANIEL CHISHOLM,
MATHEW A. NIELSEN,

             Defendants.

_____

**DECISION AND ORDER**

6:12-CV-6147 EAW

## INTRODUCTION

*Pro se* Plaintiff William M. Gustafson ("Plaintiff") alleges that in the early morning hours of November 27, 2010, after becoming involved in a dispute over karaoke singing at Shorts Bar ("Shorts") in the Village of Fairport, the individual defendants, each of whom was an officer with the Fairport Police Department (the "FPD"), assaulted Plaintiff and violated his constitutional rights.   Plaintiff's Complaint (Dkt. 2-2) purports to allege four causes of action: (1) assault and battery; (2) "wanton disregard" for Plaintiff's rights under color of law; (3) conspiracy to "wantonly disregard the Plaintiff's rights"; and (4) "wanton disregard and indifference of Plaintiff's rights under 42 U.S.C. § 1983 and NYS CVR Article 2 Bill of Rights § 8." (*Id.* at ¶¶ 41-54).   The Court liberally construes the complaint as setting forth claims for: (1) false arrest pursuant to 42 U.S.C. § 1983; (2) excessive use of force pursuant to 42 U.S.C. § 1983; (3) conspiracy

pursuant to 42 U.S.C. § 1983; (4) violation of New York Civil Rights Law § 8; and (5) assault and battery.

Defendants move for summary judgment on all of Plaintiff's claims. (Dkt. 29). For the reasons set forth below, Defendants' motion for summary judgment is denied as to Plaintiff's § 1983 excessive use of force claim against the individual defendants, denied as to Plaintiff's assault and battery claim against the individual defendants and the Village of Fairport, and granted in all other respects.

## BACKGROUND

At approximately 1:00 a.m. on November 27, 2010, Plaintiff and his wife, Catherine Gustafson ("Catherine"), arrived at Shorts. (Dkt. 29-30 at ¶¶ 7-8; Dkt. 33 at ¶¶ 5-6). According to Plaintiff, he ordered a drink at Shorts and attempted to sing karaoke. (Dkt. 33 at ¶¶ 7-8). Plaintiff claims that when he "went up to sing Karaoke," he was "told it was another guy's turn." (*Id.* at ¶ 7). When the other individual began singing, Plaintiff claims to have stated that "he stunk," which allegedly prompted the individual to "le[ave] the stage to confront the plaintiff with two other guys." (*Id.* at ¶ 8). Plaintiff claims that the three men then began "pushing and shoving" him while he "did absolutely nothing physical." (*Id.* at ¶ 9). Under Plaintiff's version of events, "a bouncer came over, and did absolutely nothing," and Plaintiff and his wife decided to leave Shorts of their own volition. (*Id.* at ¶¶ 10-11).

Several witnesses to the events at Shorts on the evening in question claim that Plaintiff physically assaulted another bar patron. (Dkt. 29-30 at ¶¶ 14-20). Two bouncers who were present testified that Plaintiff was removed from the bar. (*Id.* at ¶ 19).

Angry about the incident at Shorts, Plaintiff decided to report it to the police. (Dkt. 29-30 at ¶ 22; Dkt. 33 at ¶ 12). Plaintiff's daughter, Emily Gustafson ("Emily"), met Plaintiff at the FPD station. (Dkt. 29-30 at ¶¶ 23-24; Dkt. 33 at ¶ 12). The FPD station was not open, as it was approximately 1:30 a.m. (Dkt. 29-30 at ¶ 24; Dkt. 33 at ¶ 13). Plaintiff called 911 and Defendant Daniel Chisholm ("Officer Chisholm") arrived at the FPD and escorted Plaintiff and Emily inside. (Dkt. 29-30 at ¶¶ 24-25; Dkt. 33 at ¶¶ 13-15). Plaintiff claims that he explained what had happened at Shorts and "requested that police, with Plaintiff along, go to Shorts and request an apology from management and/or ownership. . . ." (Dkt. 33 at ¶ 16).

Defendant Phillip Provenzano ("Officer Provenzano") subsequently arrived at the FPD station. (Dkt. 29-30 at ¶ 26; Dkt. 33 at ¶ 17). According to both Plaintiff and Emily, Officer Provenzano was verbally aggressive towards Plaintiff, swearing and name-calling. (Dkt. 33 at ¶¶ 17-20; Dkt. 33-2 at 2). Officer Provenzano left the FPD station to investigate what had happened at Shorts. (Dkt. 29-30 at ¶ 28; Dkt. 33 at ¶¶ 18-20). When Officer Provenzano returned, he told Plaintiff that nothing further would be done about his complaint. (Dkt. 29-30 at ¶ 29; Dkt. 33 at ¶ 20). Plaintiff claims to have

told Officer Provenzano that he was going to "contact his superiors and report him for his belligerent, abusive and unprofessional behavior." (Dkt. 33 at ¶ 24).  Plaintiff and Emily left the FPD station; Plaintiff claims that as they were leaving, Officers Chisholm and Provenzano told him to call them if he returned to Shorts and "ha[d] any problems." (*Id.* at ¶ 26).  According to Defendants, Officers Chisholm and Provenzano told Plaintiff not to return to Shorts.  (Dkt. 29-30 at ¶ 31).  Plaintiff and Emily left the FPD station at roughly 1:55 a.m. and "went back to Shorts for an apology." (Dkt. 29-30 at ¶¶ 31-32; Dkt. 33 at ¶ 27).

Plaintiff's and Defendants' versions of Plaintiff's second visit to Shorts differ greatly.  According to Plaintiff's daughter, "all the bouncers were waiting for [Plaintiff and his daughter] and began to scream as soon as [Plaintiff] exited [his daughter's] car." (Dkt. 33-2 at 2).  Plaintiff claims to have been "jumped on" by a patron and to have called 911 for a second time.  (Dkt. 33 at ¶ 30).

According to Defendants, when Plaintiff returned to Shorts, the bouncers locked the door and would not let him enter.  (Dkt. 29-30 at ¶ 33).  Plaintiff used a raised voice to tell the bouncers through the window that he wanted an apology.  (*Id.* at ¶ 35).  Several eyewitnesses testified that Plaintiff licked the window in the door.  (*Id.* at ¶ 36).  Several eyewitnesses also testified that Plaintiff made an unprovoked attack on an individual named Joshua Williams.  (*Id.* at ¶ 39).  Mr. Williams was injured and the bouncers

brought him into the bar.  (*Id.* at ¶¶ 40-41).  Defendants agree that Plaintiff called 911 for a second time.  (*Id.* at ¶ 42).

Officers Provenzano and Chisholm responded to Plaintiff's 911 call.  (Dkt. 29-30 at ¶ 43; Dkt. 33 at ¶¶ 32-34).  According to Plaintiff, Officer Provenzano immediately began verbally assaulting Plaintiff and did not perform any investigation of what had happened.  (Dkt. 33 at ¶ 32).  Plaintiff admits to having made several antagonistic comments to Officer Provenzano, including "are you just plain stupid," and "go fuck yourself."  (*Id.* at ¶¶ 36-37).  Defendants claim that Plaintiff resisted arrest.  (Dkt. 29-30 at ¶¶ 50-54).  Non-party witness John Scinta confirmed the officers' version of events.  (*Id.* at ¶¶ 55-62).

According to Plaintiff, the officers "never mentioned arrest."  (Dkt. 33 at ¶ 37).  Plaintiff claims that he walked away from Officer Provenzano and that Officer Provenzano then "attacked [him] from behind."  (*Id.* at 38).  Plaintiff's daughter Emily provided a sworn statement in which she claims that Officer Provenzano "kick[ed] [Plaintiff's] legs out from under him" and continued to kick him while he was on the ground.  (Dkt. 33-2 at 2).  Plaintiff further claims that Officers Provenzano and Chisholm used pepper spray on him and kicked him "in the side of the torso and on his legs" while he was on the ground.  (Dkt. 33 at ¶ 42).  According to Plaintiff, he asked to speak to his attorney "at least five times" while being kicked by the officers.  (*Id.* at ¶ 43).  Plaintiff further claims that Defendant Mathew Nielsen ("Sergeant Nielsen") arrived on the scene

at some point during the altercation and that Sergeant Nielsen kicked him. (*Id.* at ¶ 50; Dkt. 29-7 at 70:19-24).

Plaintiff was taken to the FPD station. (Dkt. 29-30 at ¶ 65; Dkt. 33 at ¶¶ 51-52). Plaintiff was charged with assault in the third degree, criminal trespass, and resisting arrest. (Dkt. 29-7 at 16:2-7; Dkt. 29-30 at ¶ 69). Plaintiff ultimately pled guilty to attempted assault. (Dkt. 29-7 at 15:10-13; Dkt. 29-30 at 70).

Plaintiff commenced this action in Supreme Court, Monroe County, on February 22, 2012. (Dkt. 2-2). Defendants removed the action to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1441. (Dkt. 2). Plaintiff made a motion for remand of this action (Dkt. 10). On June 20, 2012, the Honorable Michael A. Telesca, United States District Judge, entered a Decision and Order denying Plaintiff's motion to remand. (Dkt. 22).

Discovery closed on February 25, 2014. (Dkt. 28). On May 23, 2014, Defendants filed the instant motion for summary judgment (Dkt. 29). Plaintiff filed his opposition on August 18, 2014. (Dkt. 33-34). Defendants filed a reply on September 5, 2014. (Dkt. 35). Plaintiff filed a sur-reply on September 9, 2014.[1] (Dkt. 36).

---

[1]    Plaintiff did not seek the Court's permission prior to filing this sur-reply, in violation of Local Rule of Civil Procedure 7(a)(6). Nevertheless, and in consideration of the Plaintiff's *pro se* status, the Court exercises its discretion to consider this filing.

## DISCUSSION

**I.    Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

As a threshold matter, the Court must determine what causes of action Plaintiff seeks to assert. "In evaluating a *pro se* complaint, a court is not limited to the causes of action specified by the plaintiff, but instead 'must construe it liberally, applying less

stringent standards than when a plaintiff is represented by counsel,' *Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir. 1996), and must construe it to raise the strongest claims it suggests. . . ." *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, No. 12-CV-8268 (JPO), __ F. Supp. 3d __, 2014 WL 6611560, at *5 (S.D.N.Y. Nov. 21, 2014). Having reviewed the complaint liberally, the Court determines that Plaintiff has attempted to allege the following claims: (1) false arrest pursuant to 42 U.S.C. § 1983; (2) excessive use of force pursuant to 42 U.S.C. § 1983; (3) conspiracy pursuant to 42 U.S.C. § 1983; (4) a claim under New York Civil Rights Law § 8; and (5) a claim for assault and battery. In addition, Plaintiff asks the Court to grant him prospective and/or injunctive relief, in addition to monetary damages. The Court considers each of these claims below.

## II.    Prospective/Injunctive Relief

Plaintiff's complaint purports to seek prospective and/or injunctive relief. Specifically, Plaintiff asks that the Court: (1) order the Village of Fairport to dismiss Officer Provenzano from employment and to reprimand Officers Chisholm and Nielsen; (2) "permanently disbar[]" Officer Provenzano "from employment in any form of government or quasi-government law enforcement in New York State"; and (3) order the Village of Fairport and the FPD to "develop guidelines to ensure that citizens are not unlawfully or inappropriately arrested, that appropriate force will be used, and ensure

-8-

sufficient accountability by revising the disciplinary policies and procedures for members of the police department who are found to have committed abuses. . . ." (Dkt. 2-2 at 9).

Defendants argue that the Court lacks subject matter jurisdiction to entertain Plaintiff's requests for prospective/injunctive relief because Plaintiff cannot show an actual case or controversy as to these requests. (Dkt. 29-31 at 13-16). As the Second Circuit Court of Appeals has explained:

> In order to meet the constitutional minimum of standing to seek injunctive relief, [a plaintiff] must carry the burden of establishing that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct. In doing this, he cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future.

*Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (citations and internal quotation marks omitted). If a plaintiff cannot show standing to seek injunctive relief, the Court "lack[s] subject matter jurisdiction to entertain a request for such relief." *Id.* In other words, the Court cannot hear Plaintiff's request for injunctive relief unless he can demonstrate that he is in danger of being unconstitutionally damaged by Defendants in the future. *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011) ("In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future – otherwise there is no remedial benefit that he can derive from such judicial decree.").

As Defendants correctly argue, there is no evidence in the record before the Court to support a finding that Plaintiff is likely to have a future encounter with the FPD such

that he has standing to seek prospective relief. First, Plaintiff concedes that Officer Provenzano is no longer employed by the FPD. (Dkt. 34 at 18). As such, there is no evidence that Plaintiff is likely to encounter Officer Provenzano in any kind of official capacity. Moreover, and as discussed further below, there is no evidence that the FPD or its officers have a pattern or practice of engaging in excessive uses of force or false arrests such that the Court could find standing. *See MacIssac*, 770 F. Supp. 2d at 601 ("The alleged failures to train, supervise, and discipline fall short of what *Lyons* requires for equitable standing in this case: that is, an official policy that Taser stun guns were to be used in every stop and arrest, without regard to whether the suspect resisted arrest or otherwise provoked the use of force. Moreover, even such a policy might not suffice here, given how speculative it is that [plaintiff] will be stopped, arrested, and subjected to the use of a Taser stun gun yet again.").

District courts in the Second Circuit have not hesitated to find standing lacking where a plaintiff cannot show that he or she is likely to be subject to a future injury. *See Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215, 232 (E.D.N.Y. 2014); *Williams v. City of N.Y.*, 34 F. Supp. 3d 292, at 296-97 (S.D.N.Y. 2014); *Stack v. City of Hartford*, 170 F. Supp. 2d 288, 293-94 (D. Conn. 2001); *see also Gary Alan Green & Broadway Sound & Video, Inc. v. Jackson*, 36 Fed. App'x 663, 668 (2d Cir. 2002) (*sua sponte* dismissing claims for injunctive or declaratory relief for lack of subject matter jurisdiction because "[a]ny assertion that [plaintiff] will again have negative encounters with . . . police

officers or that he is likely to appear before an administrative law judge is far too speculative to satisfy the standing requirement."). Summary judgment is appropriate as to Plaintiff's requests for prospective relief because he cannot show that he has standing to seek such relief.

## III.    False Arrest

Plaintiff alleges in his complaint that he was "not properly arrest[ed]. . . ." (Dkt. 2-2 at ¶ 47). To the extent Plaintiff seeks to pursue a claim for false arrest, he has failed to show the existence of a genuine issue of material fact.

Claims for false arrest may be brought pursuant to § 1983 because they implicate the Fourth Amendment's protection of an individual's liberty interest with respect to criminal prosecutions. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995); *see also Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir. 1994) ("The tort of false arrest supports a claim against state police under section 1983 because it violates the Fourth Amendment."). Plaintiffs bringing such a claim must meet the state law requirements for the underlying tort, *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010), and "show some deprivation of liberty consistent with the concept of 'seizure'" sufficient to implicate the Fourth Amendment. *Singer*, 63 F.3d at 116. Under New York law, a plaintiff claiming false arrest "must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'"

*Savino v. City of N.Y.*, 331 F.3d 63, 75 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

In this case, it is undisputed that Plaintiff pled guilty to the crime of attempted assault in the third degree as a result of the incident at Shorts on November 27, 2010. (Dkt. 33 at ¶ 65; Dkt. 33-5 at 43).  Although Plaintiff contends that this is a lesser crime than the original charges (Dkt. 33 at ¶ 65), it is well-established that "a plea of guilty to a charge lesser than that for which plaintiff was arrested also bars a Section 1983 action for arrest without probable cause." *Roundtree v. City of N.Y.*, 778 F. Supp. 614, 619 (E.D.N.Y. 1991); *see also Horvath v. City of N.Y.*, No. 12 CV 6005(RJD) (JMA), 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015) ("[P]laintiff pled guilty, albeit not to the charges for which he was arrested. . . .  Nonetheless, plaintiff's guilty plea . . . is conclusive evidence that there was probable cause for his arrests, and therefore his false arrest claims are barred."); *Cuellar v. Love*, No. 11-CV-3632 (NSR), 2014 WL 1486458, at *5 (S.D.N.Y. Apr. 11, 2014) ("A conviction or guilty plea conclusively establishes that probable cause existed and bars a § 1983 claim, even if the conviction or plea is to a lesser charge.") (citations omitted); *Masetta v. Town of Irondequoit*, No. 06-CV-6143, 2010 WL 4823684, at *4 (W.D.N.Y. Nov. 29, 2010) ("[A] guilty plea on an underlying charge establishes probable cause as a matter of law . . . the case law does not require that the offense to which a guilty plea is entered is a lesser included offense.").

Plaintiff's guilty plea conclusively establishes probable cause for his arrest. Plaintiff has offered no argument for why he should be permitted to pursue such a claim in the face of this well-established case law. As a result, to the extent Plaintiff seeks to pursue a false arrest claim, summary judgment is entered in favor of Defendants.

## IV. Excessive Use of Force

Plaintiff claims the individual defendants used excessive force during the course of his arrest. Specifically, according to Plaintiff, he had a verbal altercation with Officer Provenzano during the course of which Officer Provenzano "never mentioned arrest." (Dkt. 33 at ¶ 37). Plaintiff claims that he walked away from Officer Provenzano and that Officer Provenzano then "attacked [him] from behind." (*Id*. at 38). Plaintiff's daughter Emily alleges in a sworn statement that Officer Provenzano "kick[ed] [Plaintiff's] legs out from under him" and continued to kick him while he was on the ground. (Dkt. 33-2 at 2). Plaintiff further claims that Provenzano and Chisholm used pepper spray on him and kicked him "in the side of the torso and on his legs" while he was on the ground. (Dkt. 33 at ¶ 42). Plaintiff further states that all three individual defendants kicked him. (*Id*. at ¶ 50).

Claims that "law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The pertinent inquiry is 'whether the officers' actions are

-13-

objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Paul v. City of Rochester*, 452 F. Supp. 2d 223, 226 (W.D.N.Y. 2006) (quoting *Graham*, 490 U.S. at 397). An evaluation of the reasonableness of an officer's actions should consider "all the facts of the case, including the severity of the crime, whether the arrestee posed an immediate threat to the safety of others, and whether he actively resisted the arrest." *Carey v. Maloney*, 480 F. Supp. 2d 548, 556 (D. Conn. 2007).

Here, Defendants argue in favor of their summary judgment motion that this case is the "rare circumstance" in which a district court must make some assessment of the plaintiff's credibility, and that "no reasonable person could believe the plaintiff's testimony." (Dkt. 31 at 9-10). Defendants' argument is not meritorious. The cases they rely on are cases "where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete. . . ." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quotation omitted). Here, Plaintiff's testimony undoubtedly conflicts with the accounts of numerous eyewitnesses, including neutral third-parties, but it is not internally contradictory, nor is it incomplete. Moreover, both Plaintiff's daughter and his wife have submitted sworn statements in which they confirm Plaintiff's version of events.[2]

---

[2]     Plaintiff has also submitted what he claims is a statement from an alleged eyewitness to the events of November 27, 2010. (Dkt. 33-2 at 6-7). This unsworn

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Here, the Court cannot determine that a reasonable jury would be unable to credit Plaintiff, his daughter, and his wife. The fact that certain non-party witnesses confirmed Defendants' version of events does not allow the Court to engage in a credibility determination and reject the version of events offered by Plaintiff.

Defendants argue that, at a minimum, Sergeant Nielsen is entitled to summary judgment in his favor because there is no evidence that he was personally involved in the incident at Shorts. (Dkt. 29-31 at 4-5). However, Plaintiff testified that Sergeant Nielsen kicked him while he was on the ground outside Shorts. (Dkt. 29-7 at 70:19-24). Although Defendants argue that this testimony was "not based upon any personal knowledge of the plaintiff," (Dkt. 29-31 at 4), Plaintiff was present at the scene. On the record before it, the Court cannot find, as a matter of law, that no issues of fact exist as to whether Sergeant Nielsen was involved in the claimed excessive use of force.

Defendants also make a passing argument that they are entitled to qualified immunity with respect to Plaintiff's excessive use of force claim. (Dkt. 29-31 at 12).

_____

statement is not in admissible form and the Court has therefore not considered it on this motion for summary judgment.

Defendants make no real argument on this point, stating only that "the defendants did not violate any of the plaintiff['s] constitutional rights. Even if there was a violation, however, the defendants['] actions were at all times objectively reasonable, and they are entitled to qualified immunity." (*Id.*). "Qualified immunity is an affirmative defense, on which the defendant officials bear the burden of proof." *Sudler v. City of N.Y.*, 689 F.3d 159, 174 (2d Cir. 2012). Defendants' conclusory argument, which cites to no portion of the record, falls far short of showing that no reasonable jury could find in Plaintiff's favor on this point. Defendants have not shown that summary judgment on qualified immunity grounds is warranted.

## V.     New York Civil Rights Law § 8

Plaintiff also alleges a claim under New York Civil Rights Law § 8, which provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants can issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

N.Y. C.V.R. § 8. "[C]ase law regarding this statutory provision is sparse at best." *Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 240 (E.D.N.Y. 2014). Defendants argue that they are entitled to summary judgment on this claim because it is "governed by the [same] Fourth Amendment analysis" as Plaintiff's federal claims. (Dkt. 29-31 at 6).

In *Brown v. State*, 89 N.Y.2d 172 (1996), the New York Court of Appeals considered whether a private cause of action existed under an essentially identical provision of the New York State Constitution – namely, § 12 of the New York State Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

N.Y. Const. § 12. In concluding that such a private cause of action did exist, the New York Court of Appeals noted that "[t]he language of section 12 [of the New York State Constitution] imposes a duty regulating the conduct of police officials. It is consistent with the search and seizure provisions found in the Federal Constitution and the Constitutions of other States. Though a similar provision is found in the earlier enacted section 8 of the Civil Rights Law, the constitutional section is self-executing." *Brown*, 89 N.Y.2d at 191.

In other words, the New York Court of Appeals has found that a claim based on the language found in Civil Rights Law § 8 is directly actionable under the New York State Constitution. However, later state court cases have made it clear that the private right of action identified in *Brown* "is unavailable where an alternative remedy will adequately protect the interests at stake." *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999), *aff'd*, 234 F.3d 1261 (2d Cir. 2000) (citing *Remley v. State*, 665

-17-

N.Y.S.2d 1005, 1008-1009 (Ct. Cl. 1997)).  As a result, where a plaintiff has stated a viable § 1983 claim, "any violation of the plaintiff's right to be free of unreasonable searches and seizures can be vindicated through this claim, [and] it follows that the plaintiff[] ha[s] no private right of action under the state constitution." *Id.*  "District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983." *Campbell v. City of N.Y.*, No. 09-CV-3306 (FB)(JO), 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011) (quotation and citations omitted).

Here, as discussed above, Plaintiff has a viable § 1983 claim with respect to the alleged unlawful use of force against him.  As a result, he does not have a private right of action to seek redress of the same allegedly unlawful use of force under the search and seizures provision of the New York State Constitution.  The Court has been unable to locate any New York cases recognizing a cause of action under Civil Rights Law § 8 separate from the New York State Constitution, and the New York Court of Appeals has repeatedly applied identical analyses to § 12 of the New York State Constitution and Civil Rights Law § 8.  *See, e.g., People v. Scott*, 79 N.Y.2d 474, 486 (1992); *Sackler v. Sackler*, 15 N.Y.2d 40, 42 (1964).  Indeed, in *Scott*, the New York Court of Appeals expressly conflated the two provisions, noting that "the guarantee against unreasonable searches and seizures found in article I, § 12 was originally contained in a New York statute (Civil Rights Law § 8); it was not added to the State Constitution until 1938."  79

N.Y.2d at 486.   It would be inconsistent with the existing case law for this Court to recognize a cause of action under Civil Rights Law § 8 where it is clear that no such cause of action would exist under § 12 of the New York State Constitution.   As a result, the Court agrees with Defendants that summary judgment on Plaintiff's Civil Rights Law § 8 claim is appropriate.

## VI.   Assault and Battery

Plaintiff also alleges that the individual defendants "assaulted and battered" him. (Dkt. 2-2 at ¶¶ 42, 44-45).   "Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical."   *Humphrey v. Landers*, 344 Fed. App'x 686, 688 (2d Cir. 2009) (quotation and alterations omitted); *see also Benson v. Yaeger*, No. 05-CV-784S, 2009 WL 1584324, at *4 n.6 (W.D.N.Y. June 3, 2009) ("The test for whether a plaintiff can maintain a New York State law assault and battery cause of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim. . . .") (quotation omitted).

As set forth above, genuine issues of material fact exist as to Plaintiff's excessive use of force claim.   Because the same analysis applies to Plaintiff's assault and battery claim, the Court denies Defendants' motion for summary judgment as to this cause of action.

## VII.   Conspiracy

Plaintiff claims that the individual defendants "conspired to wantonly disregard the Plaintiff's rights." (Dkt. 2-2 at ¶ 51). The Court interprets this allegation as a claim for conspiracy pursuant to § 1983. Defendants argue that they are entitled to summary judgment on this claim because "there is absolutely no proof of a conspiracy in this case. . . ." (Dkt. 29-31 at 11-12).

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[T]o survive a motion for summary judgment, the non-moving party's evidence of a § 1983 conspiracy must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Phoenix v. Reddish*, 175 F. Supp. 2d 215, 218 (D. Conn. 2001).

Plaintiff has not submitted any evidence of a conspiracy, either direct or indirect. The mere fact that the individual defendants were all present at the time of the alleged constitutional violations is insufficient to support a conspiracy claim. *Id.* ("The plaintiff's only evidence of a conspiracy is that [defendant] was present when the alleged unconstitutional conduct occurred. This amounts to nothing more than rank speculation and conjecture. . . ."). In the absence of any evidence of agreement, summary judgment

on Plaintiff's § 1983 conspiracy claim is warranted. *Ostensen v. Suffolk Cnty.*, 236 Fed.

App'x 651, 653 (2d Cir. 2007).

Additionally, while not specifically raised by Defendants, "[a] motion for summary judgment searches the record," *Montgomery v. Scott*, 802 F. Supp. 930, 935 (W.D.N.Y. 1992), and here, the record shows that even if Plaintiff had offered proof of a conspiracy among Defendants, Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine.   The intracorporate conspiracy doctrine "bars conspiracy claims against employees of entities . . . (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's 'scope of employment' exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed." *Richard v. Fischer*, 38 F. Supp. 3d 340, 353 (W.D.N.Y. 2014) (quotation omitted and alteration in original).   Here, the individual defendants were all employees of the Village of Fairport at the time of the alleged conspiracy, and are alleged only to have conspired with each other.   There is no evidence in the record that they were pursuing personal interests beyond their scope of employment.

## VIII.  Other Constitutional Issues

Although such claims are not clearly raised by his complaint, Plaintiff argues in opposition to Defendants' motion that he has claims for violation of his First, Fifth, and Sixth Amendment rights.   Specifically, Plaintiff argues that (1) Defendants violated his

First Amendment rights by kicking him after he asked to speak to his lawyer and (2) Defendants violated his Fifth and Sixth Amendment rights by failing to read him the *Miranda* warnings. (Dkt. 34 at 12-13). Even if Plaintiff had properly pled these claims (which he has not), he has failed to show a genuine issue of material fact.

With respect to Plaintiff's claim that he was retaliated against for exercising his First Amendment rights, "[t]o prevail on a First Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff must prove by a preponderance of the evidence that (1) the expression at issue was constitutionally protected, (2) the alleged retaliatory action adversely affected his constitutionally protected expression, and (3) a causal relationship existed between the constitutionally protected expression and the retaliatory action." *Camacho v. Brandon*, 317 F.3d 153, 160 (2d Cir. 2003). In other words, Plaintiff must show that Defendants' actions were specifically motivated by his claimed exercise of his First Amendment rights. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim.").

Here, Plaintiff cannot show that the Defendants' alleged actions were motivated by his claimed constitutionally protected expression. Under Plaintiff's version of events, Defendants had already begun beating and kicking him prior to his asking for his lawyer. (Dkt. 33 at ¶¶ 38-39, 41, 43). An adverse action (here, the alleged police beating of Plaintiff) that began prior to the claimed protected expression cannot support a First

Amendment retaliation claim. *Barry v. Town of Elma*, No. 02-CV-344, 2005 WL 711842, at *4 (W.D.N.Y. Mar. 28, 2005) ("There can be no causal link where the alleged adverse action *predated* the protected activity."); *see also Parkash v. Town of Se.*, No. 10 CV 8098(VB), 2011 WL 5142669, at *7 (S.D.N.Y. Sept. 30, 2011), *aff'd*, 468 Fed. App'x 80 (2d Cir. 2012); *Walter v. Boehm*, No. 1:05-CV-01167, 2007 WL 6890354, at *7 (N.D.N.Y. Aug. 15, 2007), *aff'd*, 309 Fed. App'x 531 (2d Cir. 2009). Because Plaintiff's own version of events shows no causal link between his request for an attorney and his alleged beating at the hands of the individual defendants, summary judgment on any First Amendment retaliation claim is warranted.

With respect to Plaintiff's claim that he was not read the *Miranda* warnings, "*Miranda* warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment. The remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-incriminating statements. The remedy is not a § 1983 action." *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (citation omitted); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (Defendants' "failure to inform plaintiffs of their rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not, without more, result in § 1983 liability. While a defendant has a constitutional right not to have a coerced statement used against him, a defendant does not have a constitutional right to receive *Miranda* warnings.").

Plaintiff did not have an independent constitutional right to receive the *Miranda* warnings, and so any claim based on this alleged failure fails as a matter of law.

## IX.   Municipal Liability and Official Capacity Claims

Defendants argue that Plaintiff has failed to produce evidence from which a reasonable jury could find liability on behalf of the Village of Fairport. Defendants also argue that Plaintiff's official capacity claims against the individual defendants should be dismissed as duplicative of his claims against the Village of Fairport.

With respect to Plaintiff's official capacity claims, "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)); *see also 5 Borough Pawn, LLC v. City of N.Y.*, 640 F. Supp. 2d 268, 297 (S.D.N.Y. 2009) ("A suit for damages against a municipal officer in their official capacity is the equivalent of a damage suit against the municipality itself.") (internal quotations and citation omitted). Plaintiff's claims against the individual defendants in their official capacities are merely duplicative of his claims against the Village of Fairport, and summary judgment on these claims is thus appropriate.

With respect to Plaintiff's federal claims against the Village of Fairport, municipalities are not subject to § 1983 liability on the basis of a *respondeat superior* theory. In order to maintain a § 1983 action against a municipal defendant, a plaintiff must identify a municipal policy or custom from which the alleged injury arose. *Monell*

*v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).   A city's "failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007).   "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).

In this case, Plaintiff argues that there is evidence that Officer Provenzano and Officer Chisholm were improperly trained.   Specifically, Plaintiff maintains that Officer Provenzano had worked at four different police departments and that "[a] young police officer cannot be properly trained when job hopping in that fashion." (Dkt. 33 at 55). Plaintiff further argues that Officer Chisholm was made a full-time police officer only 19 days before the incident with Plaintiff and that he was hired solely because his mother was the police chief for the FPD. (*Id.* at ¶¶ 57-58).

Defendants argue that Plaintiff has not submitted admissible evidence in support of these contentions. (Dkt. 35 at 6).   This is accurate.   More importantly, even assuming *arguendo* that Plaintiff's contentions are true, they are insufficient to establish municipal liability. "[A] claim of inadequate training will trigger municipal liability only where the

-25-

failure to train amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Walker v. City of N.Y.*, 974 F.2d 293, 297 (2d Cir. 1992). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). This is because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Plaintiff cannot establish a pattern of constitutional violations by untrained employees of the Village of Fairport, nor has he identified any other evidence from which a reasonable jury could find a deliberate failure to train by the Village of Fairport. Summary judgment is thus warranted on Plaintiff's federal claims against the Village of Fairport.

However, a different analysis applies to Plaintiff's state law assault and battery claims. "Although a municipality cannot be held vicariously liable on a section 1983 claim, under New York state law, a municipality may be held vicariously liable on state law claims asserted against individual officers under a theory of *respondeat superior*. This includes claims against a municipality for the actions of its officers in committing assault and battery." *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 267 (N.D.N.Y. 2014) (citations omitted). As discussed above, genuine issues of material fact

exist as to Plaintiff's assault and battery claim against the individual defendants.  As a result, summary judgment as to the Village of Fairport is not appropriate on this claim.

## X.    Punitive/Treble Damages

Finally, Defendants ask the Court to determine that Plaintiff is not entitled to punitive and/or treble damages, as requested in his complaint.  Defendants' sole argument as to punitive damages is that "[i]t is well-established that a plaintiff cannot recover punitive damages from a municipality."  (Dkt. 29-31 at 17).  While this is accurate, Defendants fail to address the issue that there are also individual defendants in this matter.   Although punitive damages are not available against municipalities or against individuals sued in their official capacities, punitive damages may be awarded against defendants sued in their individual capacities.  *De Michele v. City of N.Y*, No. 09 Civ. 9334(PGG), 2012 WL 4354763, at *22 (S.D.N.Y. Sept. 24, 2012).  It would therefore be inappropriate for the Court to rule that Plaintiff is barred from seeking punitive damages in this matter.   The Court agrees with Defendants that there is no specific statutory authority for seeking treble damages in this matter, but that is not an issue that needs resolving at this time.  If this matter proceeds to trial, the Court will properly instruct the jury as to the available remedies.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied as to Plaintiff's § 1983 excessive use of force claim against the individual defendants in

their individual capacities, denied as to Plaintiff's assault and battery claim against the Village of Fairport and the individual defendants in their individual capacities, and granted in all other respects.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: May 29, 2015
       Rochester, New York

-28-